S. LANE TUCKER
United States Attorney

JENNIFER IVERS
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: jennifer.ivers@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CHRISTOPHER PANAGIOTOU-SCIGLIANO,<br><br>　　　　　Defendant. | No. 3:21-cr-00068-SLG |

## SENTENCING MEMORANDUM

The United States recommends imposition of the following sentence:

**INCARCERATION**............................................................................**20 YEARS**
**SUPERVISED RELEASE**..........................................................................**LIFE**
**SPECIAL ASSESSMENT**.......................................................................**$100**
**RESTITUTION** ...................................................................................**$3,000**
**JVTA AND AVAA ASSESSMENTS**........................................... **$15,000**

## FACTS

Minor Victim A met the defendant when he was around 10 years old. PSR ¶ 7. The

defendant and Minor Victim A's family were all farmers in Idaho. *Id.* They grew close, and the defendant eventually moved next door. *Id.* When the defendant moved to Alaska, Minor Victim A and his family members traveled from Idaho to Alaska to visit the defendant's new home in Haines. PSR ¶ 8. During that visit, the defendant – a trusted adult and close friend to Minor Victim A – suggested that they spend a night alone together away from the others. *Id.* Then the defendant suggested they should be naked around each other. *Id.* These ideas were unusual to Minor Victim A, but he went along because of his trust and care for the defendant.

Then the defendant, 36, took things in an explicitly sexual direction. He persuaded 15-year-old Minor Victim A to engage in hand-to-penis sexual contact. PSR ¶ 9. This happened while some of Minor Victim A's family members were in Alaska, but the defendant had successfully convinced Minor Victim A and his family that they were safe alone together. PSR ¶¶ 8-9.

Minor Victim A returned to Alaska the next year. PSR ¶ 10. His parents were not aware of what had happened on the last trip and trusted the defendant enough to send Minor Victim A with Minor Victims B and C instead of his family. *Id.* This time, without other adults around, the defendant immediately established constant nudity as the standard for his cabin. PSR ¶ 11. By halfway through that trip, all the minors were following the defendant's lead. *Id.*

The defendant then escalated his sexual abuse of Minor Victim A. The defendant encouraged Minor Victim A to sleep naked with him and his wife; encouraged Minor

Victim A to have sex with his wife; once again performed hand-to-penis sexual contact on Minor Victim A; engaged in sexual activity while the defendant's toddler-age sons were in the room and even sitting on the victims' laps; and began and continued to regularly perform oral sex on Minor Victim A. PSR ¶¶ 11-12.

The defendant was the only trusted adult with Minor Victim A during this entire trip. He abused that trust by escalating the frequency and degree of his sexual abuse of Minor Victim A until a reached a peak near the end of the trip, when the defendant took videos of himself performing anal sex on Minor Victim A. PSR ¶ 13.

Once he had crossed the line into overt sexual activity with Minor Victim A, the defendant did not stop. When visiting Idaho in 2019, the defendant once again created the opportunity to be alone with Minor Victim A and once again used that time to commit further sexual abuse. PSR ¶ 14.

Minor Victims B and C had very similar experiences. The defendant became friends with their parents based on their shared religious and farming interests. PSR ¶ 15. Their parents trusted the defendant enough to allow Minor Victim B to spend time with the defendant alone. *Id.* The defendant immediately began grooming Minor Victim B in the same way he did for Minor Victim A: first by walking around naked, then encouraging Minor Victim B to be naked, and finally by turning things sexual with hand-to-penis sexual contact. *Id.* This began when Minor Victim B was only 12 years old. *Id.*

Likewise, Minor Victim C was 12 when the defendant first started sexually abusing him. PSR ¶ 16.

Minor Victim B and C's parents trusted the defendant enough to send them to Haines, Alaska multiple times. PSR ¶¶ 16-18. During those trips, the defendant – having already initiated sexual contact with all three victims – escalated that sexual conduct substantially, including performed sex acts with the victims in front of each other or in groups, encouraging Minor Victims B and C to have sex with his wife, and engaging in anal sex with Minor Victim C. PSR ¶¶ 16-18, 21. Although uncharged, the defendant photographed much of that sexual activity as well.

Minor Victims A, B, and C were not the defendant's only victims. He brought other boys onto his property and used the same grooming techniques on them. PSR ¶¶ 21-23. The defendant sexually assaulted the teenage girlfriend of one of his male victims. PSR ¶ 24.

The statements by Minor Victims A, B, and C indicate the defendant was engaged in this grooming process by at least 2012. PSR ¶ 15. In reality, however, it began when the defendant was a teenager and sexually abused his own younger siblings. PSR ¶ 25.

Even if he disputes some of the above facts, Christopher Panagiotou-Scigliano cannot dispute that he has engaged in a years-long enterprise of grooming minor boys, persuading them to engage in sexual activity, and photographing or filming such activity.

## GUIDELINES CALCULATION

The United States agrees with the USPO's calculation that the defendant's total offense level is 40 and criminal history category is I, leading to a guideline range of 290-365 months.

The defendant's remaining unresolved objection relates to the two-level enhancement under U.S.S.G. § 2G2.1(b)(1) for a victim under 16 years old because Minor Victim A was 16 at the time the charged video was made.

Two different legal bases support the enhancement: the language of 18 U.S.C. § 2251(a), and the definition of relevant conduct under U.S.S.G. § 1B1.3(a). As the First Circuit has explained, production of child pornography does not begin and end on the date of the visual depiction. *United States v. Gonyer*, 761 F.3d 157, 167 (1st Cir. 2014). Rather, the offense incorporates persuading, inducing, enticing, or coercing the minor – in other words, the grooming process. *Id.* Here, the defendant began persuading the minor victim to engage in sexual activity when he was 15 during his first trip to Alaska. On the victim's second trip, the defendant continued inducing the minor victim to engage in sexual activity and took the charged.

Moreover, specific offense characteristics may be based on relevant conduct. U.S.S.G. § 1B1.3(a); *United States v. Newbert*, 952 F.2d 281, 284 (9th Cir. 1991). The defendant began grooming Minor Victim A at age 15. He began with nudity, then hand-to-penis contact, oral sex, and finally anal sex. The earlier instances of nudity and hand-to-penis contact occurred while the minor victim was 15, and the later escalation to anal sex only happened as a result the prior grooming. Accordingly, the defendant committed that conduct "in preparation for" the charged offense, and his relevant conduct can be used to enhance his offense level. U.S.S.G. § 1B1.3(a)(1).

# STATUTORY CRITERIA AND RECOMMENDED SENTENCE

*Nature and Circumstances of the Offense*

This offense does not merely involve a video of a sexual act. In involves a years-long manipulation and grooming process with discrete steps that allowed the defendant to achieve his ultimate goal: sexual access to teenage boys. First, he ingratiated himself with the boys' families, focusing on religious families with common interests in farming. Once the parents fully trusted him, he found alone time with the boys, especially overnight. Then he introduced and normalized nudity. Next, he persuaded the boys to participate in sexual touching, often using older, more experienced victims to normalize the sexual contact for new victims. Finally, he took the sexual contact as far as he could with each victim, including oral and anal sex.

*History and Characteristics of the Defendant*

The defendant, despite his limited education, used his farming skills to sustain himself. PSR ¶ 76-78. He has no history of controlled substance use or mental health problems. PSR ¶ 73-75.

*Seriousness of the offense, deterrence, and protection of the public*

There is a common thread in the victim impact statements: the defendant is a charismatic man who convinced parents that he was a safe person for their children to be alone with. Then he drove a wedge between the victims and their families, all the while sexually exploiting teenage boys.

About one in six men has experienced sexual abuse.[1] Yet sexual abuse of men and boys is consistently underreported.[2] Despite underreporting, male victims experience similar trauma as female victims, sometimes with even more shame, self-doubt, and confusion.[3]

A sentence of 20 years captures the seriousness of this offense. It will allow the victims to be free of the defendant's influence for many years so they can recover from his manipulation and sexual abuse. He will be in his late 50s upon release, and after that he must participate in sex offender treatment and register as a sex offender. It will also protect the defendant's young children, who were exposed to sexual activity and possibly sexual abuse by the defendant. PSR ¶ 24. They will be adults when the defendant is released.

*Rehabilitation*

The defendant should participate in sex offender treatment as recommended by the USPO.

*Sentencing Disparity*

Defendants with Panagiotou-Scigliano's primary guideline, offense level, and criminal history category face average sentences of 240 to 244 months.[4] Although the defendant's guideline range is higher than the 20-year proposed sentence, as the above data show, defendants typically do not receive guideline sentences in these cases. The defendant

---

[1] https://1in6.org/get-information/the-1-in-6-statistic/
[2] *Id.*; https://slate.com/human-interest/2014/04/male-rape-in-america-a-new-study-reveals-that-men-are-sexually-assaulted-almost-as-often-as-women.html.
[3] https://www.rainn.org/articles/sexual-assault-men-and-boys
[4] United States Sentencing Commission Judiciary Sentencing Information, available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

U.S. v. Panagiotou-Scigliano
3:21-cr-00068-SLG

also faces charges in Idaho, where he may receive a concurrent sentence more than 20 years of imprisonment for his conduct occurring there.

## Restitution

The defendant has agreed to pay $3,000 in restitution to Minor Victim A. The United States is not aware of any other restitution owed but will inform the Court of any new information.

## JVTA and AVAA

18 U.S.C. § 3014 states that "the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under . . . chapter 77 (relating to . . . trafficking in persons) [or] chapter 110 (relating to sexual exploitation and other abuse of children)." Those chapters include the defendant's offenses. That statute is silent on how courts should determine a defendant's indigent status. *See id.* However, simply qualifying for public counsel does not automatically make a defendant indigent for purposes of the JVTA assessment. *See United States v. Kelley,* 861 F.3d 790 (8th Cir. 2017) (finding no clear error in requiring assessment of defendant who qualified for public counsel); *United States v. Saair*, 737 Fed.Appx. 342 (9th Cir. 2018) (unpublished) (affirming the assessment imposed against a defendant who argued he was indigent due to public counsel).

The analysis of indigence for the application of this assessment is forward looking, meaning the Court should consider a defendant's ability to pay prospectively. *See Kelley,* 861 F.3d at 801, *citing Strange*, 692 Fed.Appx. at 349. In *Strange* the Ninth Circuit found the district court "properly took into account that [defendant] was able-bodied." *Id.* The

Eighth Circuit expanded on this reasoning in *Strange* where it found a fundamental difference between appointing counsel at the beginning of a case and assessing a fee during sentencing. *Id.* at 800. A court making a fee assessment should consider the defendant's health, work history, and future earning ability. *Id.* at 801.

Here, Panagiotou-Scigliano met his victims while working as a successful farmer. He was actively working until his arrest, and there is no evidence to suggest he will be indigent for purposes of the JVTA. Therefore the Court should impose the $5,000 assessment.

This Court should also impose a $10,000 assessment under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act, 18 U.S.C. § 2259A, which provides for a special assessment for certain child pornography offenses, including production of child pornography. The amount should be based on the § 3553(a) factors. 18 U.S.C. § 2259A(c). A $10,000 assessment considers the seriousness of Panagiotou-Scigliano's offenses as well as his restitution and other financial obligations.

## CONCLUSION

The defendant sought to have sex with minor boys, and after years of grooming and manipulating the boys and their parents, he achieved that goal with Minor Victims A, B, C, and others. The defendant cannot be trusted to with children, even his own. A sentence of 20 years of imprisonment followed by life supervised release is sufficient but no greater than necessary to capture the seriousness of the defendant's offense, deter him and others, and protect the public from the defendant's manipulation and abuse.

RESPECTFULLY SUBMITTED February 1, 2023 at Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

/s Jennifer Ivers
JENNIFER IVERS
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2023
a true and correct copy of the foregoing
was served electronically on:

John Cashion

/s Jennifer Ivers
Office of the U.S. Attorney

U.S. v. Panagiotou-Scigliano
3:21-cr-00068-SLG