John P. Cashion
Cashion Gilmore & Lindemuth
510 L Street, Suite 601
Anchorage, AK 99501
Telephone: (907) 222-7932
Email: john@cashiongilmore.com

Counsel for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER PANAGIOTOU-SCIGLIANO,<br><br>Defendant. | 3:21-cr-00068-SLG-MMS<br><br><br>**SENTENCING MEMORANDUM** |

COMES NOW Defendant, Christopher Panagiotou-Scigliano (Panagiotou-Scigliano), by and through counsel, and hereby submits this Sentencing Memorandum to assist the Court at the imposition of sentence to proceed on February 8, 2023.

I. <u>**INTRODUCTION**</u>

Panagiotou-Scigliano appears before the Court for sentencing on the offense of Production of Child Pornography in violation of 18 U.S.C. § 2251(a). The parties negotiated a Plea Agreement (pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)) wherein the parties agree Panagiotou-Scigliano will be sentenced to 20 years (240 months)

imprisonment, to run concurrently with any sentence imposed in *State of Idaho v. Christopher Panagiotou-Scigliano*, CR09-20-2566, CR09-20-3635, and CR09-20-3785. The offense at issue carries a mandatory minimum penalty of 15 years imprisonment and a maximum of 30 years imprisonment.

Numerous defense objections to the Presentence Report (PSR) remain.[1] However, at this time, Panagiotou-Scigliano does not intend to present evidence at sentencing in relation to any of the remaining objections. The only substantive objection relating to Sentencing Guideline calculations relates to Paragraph 31 of the PSR, and that objection is withdrawn in view of Probation's appropriate and legally correct response to the objection, referencing U.S.S.G. § 1B1.3(a)(1)(A).[2] Remaining objections essentially relate to hearsay statements of unindicted co-conspirators, victims, and family members. The Court has broad discretion related to these objections pursuant to authority vested in 18 U.S.C. § 3661, and will exercise that discretion in making its factual findings as to whether the hearsay statements are sufficiently corroborated to remain in the PSR.

Panagiotou-Scigliano desires first and foremost to accept responsibility for his conduct. Acceptance of responsibility by Panagiotou-Scigliano is sincere, it has been his goal from the onset of this litigation, and Panagiotou-Scigliano very much seeks to avail himself of treatment and rehabilitation opportunities within the Bureau of Prisons. The Court is presented with an

---

[1] *See* Docket No. 76 (Addendum to PSR) at pages 27-31.
[2] *See id*. at page 31.

agreed upon sentence supported by the Government, the defense, and United States Probation. It is a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

Accordingly, Panagiotou-Scigliano respectfully requests the Court impose an imprisonment term of 240 months to run concurrently with any sentence imposed in *State of Idaho v. Christopher Panagiotou-Scigliano*, CR09-20-2566, CR09-20-3635, and CR09-20-3785. Supervised release for a term of 10 years is recommended, and Panagiotou-Scigliano has no objection to Probation's recommended special conditions governing release.

## II. APPLICABLE SENTENCING LAW

The landmark decision in *United States v. Booker*, 543 U.S. 220 (2005), changed sentencing in the federal courts. *Booker* renders the Federal Sentencing Guidelines as advisory only, and instructs sentencing courts to consider the Guidelines in context of all of those factors enumerated in 18 U.S.C. § 3553(a).

> Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable.[3]

The Supreme Court addressed the issue of the "presumption of reasonableness" of a within Guidelines sentence in *Rita v. United States*, 551 U.S. 338 (2007), and instructed that a within Guideline sentence is presumed reasonable only upon appellate review. The Court stated:

---

[3] *Booker*, 543 U.S. at 261.

> We repeat that the presumption before us is an *appellate* court presumption. Given our explanation in *Booker* that appellate "reasonableness" review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review.[4]

Further, the Court instructed:

> The fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness. Even the Government concedes that the appellate courts may not presume that every variance from the advisory Guidelines is unreasonable.[5]

The Ninth Circuit reiterated this premise in *United States v. Edwards*,[6] holding that a court cannot presume a sentence is substantively unreasonable only because it falls outside the range recommended by the Sentencing Commission.

The Ninth Circuit was heard on the presumption of reasonableness and directed that even on appeal the presumption of a Guideline sentence may not be reasonable. It stated:

> A court of appeals may *not* presume that a non-Guidelines sentence is *unreasonable*. Although a court may presume on appeal that a sentence within the Guidelines range is reasonable, *id*, we decline to adopt such a presumption in this circuit.[7]

The Guideline range is simply the beginning of the analysis for sentencing, not the end. The Ninth Circuit stated:

> 'The Guidelines factor [may not] be given more or less weight than any other.' So while the Guidelines are the 'starting point

---

[4] *Rita*, 551 U.S. at 351 (emphasis in original).
[5] *Id*. at 354-55.
[6] 595 F.3d 1004, 1014-15 (9th Cir. 2010).
[7] *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (*en banc*).

and initial benchmark' and must 'be kept in mind throughout the [sentencing] process,' the Guidelines range constitutes only a touchstone in the district court's sentencing considerations.[8]

A sentencing court must now consider 18 U.S.C. § 3553(a) in its entirety and impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The court, in determining the particular sentence to be imposed, shall consider –

    (1)    The nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    The need for the sentence imposed --

        (a)    to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense;

        (b)    to afford adequate deterrence to criminal conduct;

        (c)    to protect the public from further crimes of the defendant; and

        (d)    to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner[.][9]

The sentencing court is now required to consider factors that the Guidelines effectively prohibited from consideration.[10]

In order to meet the mandate of the *Booker* remedy, this Court must calculate the appropriate Guidelines range and may consider appropriate departures. It must also apply the 3553(a) factors and address any other

---

[8] *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009) (quoting *Carty*, 530 F.3d at 991).
[9] 18 U.S.C. § 3553(a)(1) & (2).
[10] *See United States v. Ameline*, 409 F.3d 1073, 1093 (9th Cir. 2005) (*en banc*).

specific characteristics of the defendant or his offense that might impact the determination of a "reasonable" sentence under the particular circumstances of this case. The Court must then consider the statutory parsimony provision and impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

### III. A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY

A. Nature and Circumstances of the Offense

Section 3553(a)(1) requires consideration of the nature and circumstances of the offense.

Panagiotou-Scigliano fully recognizes the disturbing nature and circumstances of the offense at issue. The Court will undoubtedly realize and comment upon the existence of three identified and acknowledged victims, and also the expansive period of time during which acts of sexual abuse occurred. Furthermore, as acknowledged by the parties in the Plea Agreement, relevant conduct includes events separately occurring in Idaho involving the same three victims. There is no debating the severity of the offense, and it is Panagiotou-Scigliano's goal to clearly articulate this understanding at the imposition of sentence hearing.

As a result of the severity of the offense and conduct appropriately at issue, Panagiotou-Scigliano is placed in a position where it is futile and likely counter-productive to present evidence contesting false allegations of sexual abuse directed at his own children, at his siblings, and at other adults present

in Haines, Alaska. Panagiotou-Scigliano did not sexually abuse his own children, he did not force or coerce his wife to engage in sexual acts with the identified victims, and he did not sexually assault any adult present in Haines. The piling-on of false allegations by other persons with their own clear criminal exposure for events occurring in Haines (and readily apparent motives to lie) is disturbing to Panagiotou-Scigliano as reflected in the objections to the PSR, but it is not intended to be the focus of sentencing for the very serious offense at issue.

Consideration of the nature and circumstances of the offense militates in favor of the agreed upon sentence of the parties, 5 years in excess of the applicable mandatory minimum sentence.

B. Panagiotou-Scigliano's History and Characteristics

Section 3553(a)(1) also requires consideration of the history and characteristics of the defendant.

Panagiotou-Scigliano was raised in rural Washington in a home where his parents were physically abusive.[11] He is the oldest of eight siblings, and he was co-opted into parenting roles for his siblings at a young age due to the illness and passing of his mother.[12] Panagiotou-Scigliano was not afforded the benefit of a formal education by his parents, and he was raised in a very isolated and conservative religious setting.[13]

---

[11] See Docket No. 76 (PSR) at ¶¶ 65-68.
[12] See id.
[13] See id.

Panagiotou-Scigliano has no history of substance abuse.[14] He is a Category I offender, with a criminal history merely consisting of a Fish and Game conviction for taking game from a motor driven boat.[15] Panagiotou-Scigliano is motivated and expressed desire during the PSR interview process to obtain a GED while incarcerated.[16] He made repeated efforts while incarcerated at the Anchorage Correctional Center (ACC) to engage in this and other rehabilitative programming, but without success due to the lack of programming at ACC. Panagiotou-Scigliano is a skilled farmer.[17]

Panagiotou-Scigliano also has the benefit of some persons in the community who continue to support him even in the face of this criminal offense and prosecution.[18] As discussed in the PSR, Panagiotou-Scigliano recently came to know an individual named Rick Phegley who has emerged as a parenting figure otherwise missing in his life.[19] Mr. Phegley has authored a letter of support that is attached as Exhibit A. Similarly, Panagiotou-Scigliano also has the support of another recent acquaintance named David Zamjahn, and Mr. Zamjahn's letter of support is attached as Exhibit B.

The letters of support express observations (recent and historical) of Panagiotou-Scigliano's kindness and concern for others. The letters express a desire to be involved in Panagiotou-Scigliano's life both during and after his

---

[14] *See id.* at ¶¶ 74-75.
[15] *See id.* at ¶ 56.
[16] *See id.* at ¶ 76.
[17] *See id.* at ¶¶ 77-78.
[18] *See id.* at ¶ 71.
[19] *See id.*

incarceration. They also express an understanding of the severity of the offense, Panagiotou-Scigliano's need for rehabilitation and treatment, and a desire to help facilitate that rehabilitation and reintegration into society. In short, they demonstrate to the Court a small network of support that is cognizant of the events at issue and nonetheless supportive of fostering Panagiotou-Scigliano's rehabilitation during the difficult road ahead.

C. Just Punishment

Section 3553(a)(2)(A) requires consideration of "the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

As stated above, the offense at issue is undeniably serious. The parties, including Probation, are in agreement that a sentence of 20 years incarceration adequately addresses this sentencing factor. Panagiotou-Scigliano is currently 41 years old. Should the Court accept the Plea Agreement, Panagiotou-Scigliano will release from incarceration at approximately 60 years of age. Panagiotou-Scigliano will be well beyond the years of parenting, his own children will be adults, and his agreed upon restrictive conditions of supervised release will prohibit meaningful interaction with children.

An imprisonment term of 240 months for a Category I offender reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.

D. Deterrence

Section 3553(a)(2)(B) requires the Court to consider "the need for the sentence imposed … to afford adequate deterrence to criminal conduct."

Deterrence is also accomplished by a sentence of 20 years. This is certainly true as to Panagiotou-Scigliano, a person without any prior history of incarceration, facing a term of incarceration that is approximately equal to half the number of years that he has existed. It is also true as to society at large, as any member of the public aware of this sentence would recognize the severity of the sentence for a person without a meaningful criminal history.

E. Avoidance of Unwarranted Sentencing Disparities

Section 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."

As discussed in the Sentencing Recommendation section of the PSR, similarly situated defendants face an average length of imprisonment of 244 months, and a median length of imprisonment of 240 months.[20] The Plea Agreement achieved in this matter is precisely in accord with these national standards, and consideration of the need to avoid unwarranted sentencing disparities also supports imposition of the negotiated imprisonment term.

---

[20] *See* Docket No. 76 (PSR Sentencing Recommendation) at page 3 of 32.

## IV. CONCLUSION

It is respectfully requested that the Court impose a sentence of 240 months incarceration, followed by a 10 year term of supervised release, incorporating and adopting Probation's recommended special conditions. This is a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

Furthermore, Panagiotou-Scigliano asks the Court to recommend placement at FCI Petersburg so as to facilitate programming in appropriate sex offender treatment, and also to facilitate placement in a community close to the area where persons supporting Panagiotou-Scigliano intend to reside.

DATED this 1st day of February 2023, at Anchorage, Alaska.

CASHION GILMORE & LINDEMUTH
Attorneys for Defendant

s/ John P. Cashion
510 L Street, Suite 601
Anchorage, AK 99501
Phone: (907) 222-7932
Fax: (907) 222-7938
Email: john@cashiongilmore.com
Alaska Bar No. 9806025

Certificate of Service

I hereby certify that on February 1, 2023,
a copy of the foregoing document was
served electronically on:

AUSA Jennifer Ivers

s/ John P. Cashion